IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| JAMES ROBINSON, JR., | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | Case No. 17−cv−0261−JPG |
| T. SLOOP, | ) | |
| JOHN/JANE DOE, | ) | |
| JOHN/JANE DOE 2, | ) | |
| JOHN/JANE DOE 3, | ) | |
| JOHN/JANE DOE 4, | ) | |
| JOHN/JANE DOE 5, | ) | |
| JOHN/JANE DOE 6, | ) | |
| R. PHELPS, | ) | |
| W. WILLS, | ) | |
| C. KRAWCZYK, | ) | |
| JOHN/JANE DOE 7, | ) | |
| JOHN/JANE DOE 8, | ) | |
| JOHN/JANE DOE 9, | ) | |
| JOHN/JANE DOE 10 | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff James Robinson, Jr., an inmate in the United States Penitentiary Marion, brings this action for deprivations of his constitutional rights by persons acting under the color of federal authority pursuant to *Bivens v. Six Unknown Agents of the Bureau of Narcotics*, 403 U.S. 388 (1971). This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

(b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
(1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
(2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the Complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; this action is subject to summary dismissal.

## The Complaint

The United States Air Force sentenced Plaintiff to a term of 90 years after a general court martial on September 8, 1983. (Doc. 1-1, p. 7). Plaintiff served his sentence in military custody until January 2006. *Id.* On January 4, 2006, Plaintiff's paperwork was sent to the Designation and Sentence Computation Center in Grand Prairie, Texas. *Id.* Plaintiff alleges that John/Jane Does #7-9, employees of the Federal Bureau of Prisons, reviewed Plaintiff's file, made his original placement, and subsequently approved Plaintiff's transfers. (Doc. 1-1, p. 5). Plaintiff alleges that John/Jane Does, #7,8,9 knew that he was a military inmate, but placed Plaintiff at

U.S.P. Terre Haute, where foreign nationals were also housed. (Doc. 1-1, p. 8). Plaintiff alleges that John/Jane Does #7,8, and 9 also approved of subsequent transfers to F.C.I. McKean, F.C.I. Elkton, F.C.I. Milan, and U.S.P Marion. (Doc. 1-1, pp. 9-12). Plaintiff alleges these placements and transfers violated the Uniform Code of Military Justice (UCMJ) Article 12, 10 U.S.C. § 812 ("Article 12"). (Doc. 1-1, p. 8-12) Plaintiff further alleges that this violated his due process rights under the Fifth Amendment. *Id.*

When Plaintiff arrived at U.S.P. Terre Haute, he came under the custody, care, and control of John/Jane Doe #1 and 2. (Doc. 1-1, p. 8). Plaintiff alleges that John/Jane Doe #1 and 2 knew or should have known he was military prisoner, yet placed Plaintiff on a housing unit that contained enemy prisoners and/or foreign nationals, assigned Plaintiff a job in immediate association with enemy prisoners and/or foreign nationals, and required Plaintiff to eat with enemy prisoners and/or foreign nationals. *Id.* Plaintiff alleges this violated Article 12. *Id.* John/Jane Doe #1 and 2 ultimately requested that Plaintiff be transferred, a request that was approved by John/Jane Doe #7-9. *Id.*

Plaintiff was transferred to F.C.I. McKean. (Doc. 1-1, p. 9). He was placed under the custody and control of John/Jane Doe #3 and 4. *Id.* Plaintiff alleges that John/Jane Doe #3 and 4 knew or should have known that Plaintiff was a military inmate, but placed Plaintiff in a housing unit that contained enemy prisoners, terrorists, and/or foreign nationals, assigned Plaintiff a job in immediate association with enemy prisoners, terrorists, and/or foreign nationals, and required him to eat in immediate association with enemy prisoners, terrorists, and/or foreign nationals. *Id.* Plaintiff alleges that John Doe #3 and 4 violated Article 12, and by extension, Plaintiff's due process rights. *Id.* John/Jane Doe #3 and 4 ultimately submitted Plaintiff for a transfer to F.C.I. Elkton, which Plaintiff alleges was similarly flawed. (Doc. 1-1, p. 9).

Plaintiff was transferred to F.C.I. Elkton, where he was placed under the custody and control of John/Jane Doe #5 and 6. (Doc. 1-1, p. 10). Plaintiff alleges that John/Jane Doe #5 and 6 knew or should have known that Plaintiff was a military inmate, but placed Plaintiff in a housing unit that contained enemy prisoners, terrorists, and/or foreign nationals, assigned Plaintiff a job in immediate association with enemy prisoners, terrorists, and/or foreign nationals, and required him to eat in immediate association with enemy prisoners, terrorists, and/or foreign nationals. *Id.* Plaintiff alleges that John/Jane Doe #5 and 6 violated USMJ Article 12, and by extension, Plaintiff's due process rights. *Id.* John/Jane Doe #5 and 6 ultimately submitted Plaintiff for a transfer to F.C.I. Milan, despite the fact that they knew or should have known that there were enemy combatants, terrorists, and/or foreign nationals. (Doc. 1-1, p. 11).

Plaintiff was transferred to F.C.I. Milan, where he was placed in the care, custody, and control of R. Phelps and Church (listed on the docket as John/Jane Doe 10). *Id.* Defendants Phelps and Church knew or should have known that Plaintiff was a military inmate, but despite this they placed Plaintiff in an institutional job that required immediate association with enemy prisoners, terrorists, and/or foreign nationals, and required him to eat in immediate association with enemy prisoner, terrorists, and/or foreign nationals. (Doc. 1-1, pp. 11-12). Plaintiff alleges that this violated Article 12, and his due process rights. (Doc. 1-1, p. 12). R. Phelps and Church then submitted Plaintiff for a transfer to U.S.P. Marion. *Id.*

Upon arriving at Marion, Plaintiff was under the care, custody, and control of W. Wills and C. Krawczyk. *Id.* Plaintiff alleges that Willis and Krawcyzk knew or should have known that Plaintiff was a military inmate, but that despite that, they placed Plaintiff in a housing unit that contained enemy prisoners, terrorists, and/or foreign nationals, gave him an institutional job assignment that put him in immediate association with enemy prisoners, terrorists, and/or foreign

nationals, and required him to eat in immediate association with enemy prisoners, terrorists, and/or foreign nationals. (Doc. 1-1, p. 13). These actions allegedly violated Article 12, and by extension, Plaintiff's due process rights. *Id.* T. Sloop is the current acting Warden at Marion, and as the Warden, Plaintiff alleges he has a duty to implement Article 12. *Id.*

## Discussion

Based on the allegations of the Complaint, the Court finds it convenient to divide the pro se action into 6 counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.

> **Count 1** – Jane/John Doe #1 and 2 violated Plaintiff's due process rights under the Fifth Amendment by housing him, giving him a job, and forcing him to eat with enemy prisoners, terrorists, and foreign nationals in violation of UCMJ Article 12 at U.S.P. Terre Haute;
>
> **Count 2** – Jane/John Doe #3 and 4 violated Plaintiff's due process rights under the Fifth Amendment by housing him, giving him a job, and forcing him to eat with enemy prisoners, terrorists, and foreign nationals in violation of UCMJ Article 12 at F.C.I. McKean;
>
> **Count 3** – Jane/John Doe #5 and 6 violated Plaintiff's due process rights under the Fifth Amendment by housing him, giving him a job, and forcing him to eat with enemy prisoners, terrorists, and foreign nationals in violation of UCMJ Article 12 at F.C.I. Elkton;
>
> **Count 4** – R. Phelps and Church (John/Jane Doe #10) violated Plaintiff's due process rights under the Fifth Amendment by housing him, giving him a job, and forcing him to eat with enemy prisoners, terrorists, and foreign nationals in violation of UCMJ Article 12 at F.C.I. Milan;
>
> **Count 5** – W.Wills, C.Krawczyk, and T. Sloop violated Plaintiff's due process rights under the Fifth Amendment by housing him, giving him a job, and forcing him to eat with enemy prisoners, terrorists, and foreign nationals in violation of UCMJ Article 12 at F.C.I. Terre Haute;
>
> **Count 6** – John/Jane Doe # 7, 8, and 9 improperly placed Plaintiff initially and approved transfers to institutions where Plaintiff would be in immediate contact with enemy prisoners, terrorists, and foreign nationals in violation of UCMJ Article 12, which violated Plaintiff's due process rights under the Fifth Amendment.

As an initial matter, Plaintiff previously attempted to file this action as a habeas case, which was dismissed because Plaintiff's request for relief includes injunctive relief and monetary damages. *See* Case No. 16-cv-1361-DRH. Plaintiff then filed the current Complaint on the district court's form. (Doc. 1). His list of Defendants on that form is consistent with the case caption. (Doc. 1). However, Plaintiff attached a document entitled "Civil Rights Complaint" as an exhibit and referred to it in lieu of drafting a statement of claim. (Doc. 1-1). In the "Parties" section of that document, Plaintiff lists additional defendants not included on the Complaint itself; but the narrative section of that document does not include any claims against those defendants. (Doc. 1-1, pp. 3-5). The Court presumes this is a drafting error, and because the statement of claim refers only to those who are currently listed as defendants in the Complaint itself, the Court will not add any further defendants to the docket because of their mere inclusion in the second list of defendants in Doc. 1-1. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (finding plaintiffs are required to associate specific defendants with specific claims so that defendants are on notice of the claims against them); FED. R. CIV. P. 8(a)(2). To the extent that Plaintiff was attempting to bring claims against any not currently listed on the case caption, those claims fail for want of specificity.

Plaintiff's Complaint fails for a number of reasons. Plaintiff has based this lawsuit on UCMJ,[1] Art. 12, which reads: "No members of the armed forces may be placed in confinement in immediate association with enemy prisoners or other foreign nationals not members of the

---

[1] Plaintiff's Complaint alleges that he began serving his sentence in 1983. While he has alleged that he is a military member, if Plaintiff's discharge has been executed, his status as a military member would have been severed at that time and Plaintiff would have no entitlement to the relief he seeks here. *United States v. Wilson*, 73 M.J. 529, 533-34 (A.F. Ct. Crim. App. 2014) ("[T]he execution of such a discharge severs not only their status as members of the armed forces, but also, unlike members serving confinement in military custody, ends their being subject to the code.")

armed forces." 10 U.S.C. § 812. Article 12 remains applicable to service members confined outside the custody of the armed forces. *United States v. Wilson*, 73 M.J. 529, 533 (A.F. Ct. Crim. App. 2014), *aff'd*, 73 M.J. 404 (C.A.A.F. 2014). "Immediate association" has been defined in the military courts, although not the Seventh Circuit, as "being confined in a manner so that [service personnel] would be directly connected or combined with captured foreign personnel." *United States v. Wise*, 64 M.J. 468, 474 (C.A.A. F. 2007). The *Wise* court found that a service person was not in "immediate association" with a foreign national when he was separated from Iraqi prisoners by a single strand of concertina wire. *Id*. The UCMJ does not require that service persons and foreign personnel be kept in separate prisons, and the *Wise* court was untroubled by the appellant's assertions that he was kept within 15 feet of two Iraqis or that he was close enough for them to attempt to engage him in conversation. *Id.* at 475-76; *See also Kuykendall v. Taylor*, 285 F.2d 480, 481 (10th Cir. 1960).

As an initial matter, Plaintiff has not adequately pleaded that he was placed in immediate association. Plaintiff's allegations are conclusory. He makes the same allegations for each of the prisons where he has been confined. But the allegations only raise a plausible inference that Plaintiff was confined in the same institution as enemy prisoners or foreign nationals.[2] And the military courts have been unequivocal that sharing an institution with an enemy prisoner or foreign national does not state a claim. Plaintiff has not alleged that he was ever confined in the same cell as a foreign national or enemy. He has not recounted specific incidents where he came into contact with a foreign national or enemy or provided the context for those contacts. On these facts his allegations that Article 12 was violated are not plausible.

If failure to state a claim was the only problem with Plaintiff's Complaint, the Court

---

[2] Article 12 does not use the word "terrorists" in its text, and so Plaintiff's repeated reference to being incarcerated with terrorists has no legal import at this stage.

would grant Plaintiff leave to amend. However, the Court also finds that the defendants are entitled to qualified immunity because it is not clear from the facts alleged that the Constitution has been violated and because the right Plaintiff complains was violated has not been clearly established.

Qualified immunity shields government officials from liability where "their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity attempts to find a balance between punishing irresponsible officials and protecting responsible officials from harassment, distraction, and liability. *Mordi v. Zeigler*, 770 F.3d 1161, 1163 (7th Cir. 2014) (quoting *Person v. Callahan*, 555 U.S. 223, 231 (2009)).

Courts use a two part test to determine whether a defendant is entitled to qualified immunity: 1) whether the conduct complained of violates the constitution; 2) whether the right was clearly established at the time the conduct occurred. *Hardaway*, 734 F.3d at 743 (citing *Pearson* 555 U.S. at 232). Either element of the test may be reached first. *Pearson*, 555 U.S. at 236. The second element requires that the right be established in a particular and relevant way; courts should avoid overgeneralizing in their analysis. *Mordi*, 770 F.3d at 1164. "The contours of that right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 630 (1987).

Although qualified immunity is an affirmative defense, the burden of meeting the two part test rests on the plaintiff. *Eversole v. Steele*, 59 F.3d 710, 717 (7th Cir. 1995). The Supreme Court has emphasized the importance of resolving qualified immunity questions at the earliest stage possible of litigation. *Saucier v. Katz*, 533 U.S. 194, 202 (2001). The Court will dismiss

8

on qualified immunity grounds where the facts of the complaint, taken as true, fail to allege the violation of a clearly established right.

First, it has not been clearly established that the defendants Plaintiff has named are amenable to suit. All of the defendants are employees of the Federal Bureau of Prisons. Plaintiff has not cited to any case law, and the Court cannot find any case law that suggests non-military members must enforce the military justice code. By its own terms the statute applies to "members of the Armed Forces." 10 U.S.C. § 802. "Armed Forces" is defined to include "the Army, Navy, Air Force, Marine Corps, and Coast Guard." 10 U.S.C. § 101. The Bureau of Prisons is not an included entity in § 802. The Supreme Court has suggested that the UCMJ cannot apply to non-military members because the authority for passing it lies in Article 1 of the Constitution, which authorizes Congress to "raise and support armies" or punish "offenses against the Law of Nations." *United States ex. rel. Toth v. Quarles*, 350 U.S. 11, 13-14 (1955). This rationale has precluded application of the UCMJ against civilian employees. *McElroy v. United States ex rel. Guagliardo*, 361 U.S. 281, 284 (1960). Other cases have suggested that the UCMJ cannot operate to compel a person not in military service to action. *Rasmussen v. Seamans*, 432 F.2d 346, 349 (10th Cir. 1970) (finding provision of UCMJ that requires a superior commanding officer to examine certain complaints does not apply to Air National Guard personnel not in federal service); *see also United States v. Escobar*, 73 M.J. 871, 874 (A.F. Ct. Crim. App. 2014) (finding that the protections of Article 12 cannot be invoked where a service person is being held by a foreign sovereign). The Court also notes that in the usual cases invoking Article 12, the defendant is the United States. *See, e.g.*, *United States v. McPherson*, 73 M.J. 393 (C.A.A.F. 2014). It is not clearly established that the named defendants are proper parties to this action.

Second, there is no case law that establishes that Plaintiff has a liberty interest in enforcing Article 12 under the Due Process Clause of the Constitution. As an initial matter, some judges have questioned whether Article 12 should even be applicable to military members confined in civilian prisons stateside. Article 58 permits a military inmate to be confined "in any penal or correctional institution under the control of the United States . . . subject to the same discipline and treatment as persons confined or committed by the courts of the United States or of the State." 10 U.S.C. § 858. Case law on whether Article 12 trumps Article 58 is unsettled and has never been interpreted by the 7th Circuit. Plaintiff cites to *United States v. McPherson* for the proposition that Article 12 is not in conflict with Article 58 and that even prisoners confined under Article 58 in a civilian facility must be kept separate from foreign nationals. 73 M.J. at 396; *see also United States v. Wilson*, 73 M.J. 529, 533 (A.F. Ct. Crim. App. 2014). But the dissent in that case argued that an interpretation that allows Article 12 to trump Article 58 creates an absurd result by providing a disincentive for the Armed Forces to use the civilian facilities and subverting the intention of Article 58. *McPherson*, 73 M.J. at 402 (Baker, C.J. dissenting). It is certainly possible that the Air Force's interpretation might not be adopted by other courts to examine the matter.

More to the point, the Court can find no cases, either in this circuit or others, or in the military courts, where a court has held that a prisoner has a due process liberty interest in the protections of Article 12. The Fifth Amendment's due process clause protects individuals against deprivations by a federal actor of their life, liberty, or property. The Supreme Court has said, as applied to prison conditions, that prisoners may have a liberty interest in being placed in conditions that create an "atypical and significant hardship" when compared to the ordinary

incidents of prison life. *Sandin v. Connor*, 515 U.S. 472, 484 (1995); *Townsend v. Fuchs*, 522 F.3d 765, 771 (7th Cir. 2008).

It is doubtful whether Article 12 creates a constitutional liberty interest. While the language of the Article itself is mandatory, not discretionary, confinement with foreign nationals does not pose an atypical and significant hardship when compared to the ordinary incident of prison life. Foreign nationals are frequently confined in federal prisons on immigration violations and for other crimes. Plaintiff has also not alleged that he has actually suffered any hardship or physical harm.[3] All he has alleged is that he was confined in the immediate vicinity of foreign nationals or enemy soldiers. These allegations do not plausibly suggest that Plaintiff suffered an atypical and significant hardship. Plaintiff has therefore failed to establish that the Constitution was violated, entitling the defendants to qualified immunity.

In fact, accepting Plaintiff's position may cause him to be subjected to harsher conditions of confinement. Other courts have pointed out that the foreign prison population in the United States is so large and common that service members confined in non-military facilities are spending more time in segregated quarters, where fewer privileges may be available, solely to avoid mixing with foreign nationals—an unintended consequence of Article 12. *Wilson*, 73 M.J. at 534 (noting that the appellant was placed in solitary confinement to avoid an Article 12 violation because the jail did not identify foreign nationals); *see also* Joshua R. Traeger, *The Confinement of Military Members in Civilian Facilities*, 39 No. 1 The Reporter 31, 33 (2012) (discussing conditions of confinement caused by multiple service members being confined in one solitary confinement cell). Plaintiff's position is unusual in that most prisoners are seeking to avoid segregation, while he is pushing an agenda that may have the consequence of sending him

---

[3] The Prison Litigation Reform Act notably precludes recovery of compensatory damages where there has not been a physical injury. 42 U.S.C. § 1997e(e).

11

there. It also suggests that Plaintiff's claims are not cognizable under the Due Process clause because the Seventh Circuit has previously found that a federal prisoner placed in a less restrictive environment was not entitled to any process. *Furrow v. Marberry*, 412 F. App'x 880, 883 (7th Cir. 2011).

Even if Article 12 does create a constitutional liberty interest, the lack of any case law on this point means that the violation has not been clearly established. If the defendants were not aware that they were violating the Constitution, then they are entitled to qualified immunity. As the Court has found no cases that suggest that Plaintiff has a liberty interest in Article 12 or that Defendants would be liable for failing to enforce that interest, the Court concludes that all defendants are entitled to qualified immunity, and this case will be dismissed with prejudice.

**Pending Motions**

Plaintiff's Motion for Leave to Proceed IFP will be addressed by separate order.

**Disposition**

**IT IS HEREBY ORDERED** that the case is **DISMISSED with prejudice** for failure to state a claim and because the Defendants are entitled to qualified immunity. Plaintiff is also assessed a strike pursuant to § 1915(g).

If Plaintiff wishes to appeal this dismissal, his notice of appeal must be filed with this Court within thirty days of the entry of judgment. FED. R. APP. P. 4(a)(1)(A). A motion for leave to appeal *in forma pauperis* should set forth the issues Plaintiff plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir.

1998). Moreover, if the appeal is found to be nonmeritorious, Plaintiff may also incur another "strike." A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline. FED. R. APP. P. 4(a)(4). A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of the judgment, and this 28-day deadline cannot be extended.

The Clerk of Court is directed to close this case.

**IT IS SO ORDERED.**

**DATED: May 17, 2017**

s/J. Phil Gilbert<br>**U.S. District Judge**